UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

CHIEN TA HSU, :
:
    Petitioner :
:
v. : CIVIL NO. 4:CV-05-2016
:
MICHAEL CHERTOFF, : (Judge McClure)
:
    Respondent :

## ORDER

December 7, 2005

**Background**

Chien Ta Hsu ("Petitioner"), a detainee of the Bureau of Immigration and Customs Enforcement ("ICE") presently confined at the Pike County Prison, Hawley, Pennsylvania, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] The sole Respondent is Michael Chertoff, Secretary of the Department of Homeland Security. Service of the petition was previously ordered.

It is undisputed that Hsu is a native and a citizen of the People's Republic of China who entered the United States in 1983. During 1995, the Petitioner became a

---

[1] The Petitioner is represented by counsel.

lawful permanent resident. On January 7, 2003, Hsu was convicted of a drug related offense in the Supreme Court of the State of New York. As a result of that conviction, the ICE commenced removal proceedings. An Immigration Judge ordered Petitioner's removal on November 22, 2004. The order of removal became final on February 14, 2005, when Hsu withdrew his appeal to the Board of Immigration Appeals. He was taken into ICE custody on January 3, 2005.

Hsu's present action does not challenge the legality of his deportation but, rather, his continued detention pending removal. Petitioner indicates that he has been subjected to a prolonged detention without any meaningful review. His petition maintains that his indefinite detention in ICE custody while awaiting deportation violates the Eighth Amendment. He asks that this Court grant him immediate release based on the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001).

Attached to the petition is a copy of a May 9, 2005 letter from ICE's Acting Field Office Director, Thomas Decker, which advised Hsu that his detention would continue and that jurisdiction of his custody would be transferred to the ICE's Headquarters Post-order Detention Unit ("HQPDU") if he was not released or removed by August 13, 2005. See Record document no. 1, Exhibit 2. Another attachment indicates that the HQPDU subsequently denied release to Petitioner by letter dated September 9, 2005. See id. at Exhibit 3.

The Respondent argues that Hsu is not entitled to federal habeas corpus relief

2

because he failed to exhaust his available administrative remedies. Specifically, it is asserted that Hsu failed a file a request for release with the HQPDU. See Record document no. 5, p. 5. Petitioner's reply states that Respondent's argument is meritless because on August 18, 2005, Hsu supplied the HQPDU with a written request for release on parole based on <u>Zadvydas</u> and supporting documents. See Record document no. 7, p. 7. This matter is ripe for consideration.

**<u>Discussion</u>**

Detention, release, and removal of aliens ordered removed is governed by the provisions of 8 U.S.C. §1231. Under §1231(a), the Attorney General has ninety (90) days to remove an alien from the United States after his order of removal, during which time detention is mandatory.[2] At the conclusion of the ninety (90) day period, the alien

---

[2] Section 1231(a)(1)(B) provides:

The removal period begins to run on the latest of the following:

(i)  The date the order of removal becomes administratively final.

(ii)  If the removal order is judicially reviewed and if the court orders a stay of the removal of the alien, the date of the court's final order.

(iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. At the conclusion of the 90 day period, the alien may be held in continued detention, or may be released under continued supervision. 8 U.S.C. §§1231(a)(3) & (6).

3

may be held in continued detention, or may be released under continued supervision. 8 U.S.C. §§1231(a)(3) & (6).

In Zadvydas, the United States Supreme Court addressed the issue of whether §1231(a)(6) authorizes the Attorney General to detain a removable alien indefinitely beyond the ninety (90) day removal period or only for a period reasonably necessary to effectuate the alien's deportation. Reasoning that the indefinite detention of aliens "would raise serious constitutional concerns," the Court concluded that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about the alien's removal from the United States. It does not permit indefinite detention." Zadvydas, 533 U.S. at 689. Furthermore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. To establish uniformity in the federal courts, the Court recognized six (6) months as a "presumptively reasonable period of detention." Id. at 701.

The Supreme Court further directed that if the alien provides good reason to believe that there is no significant likelihood of deportation in the reasonably foreseeable future at the conclusion of the six (6) month period, the burden shifts to the government to "respond with evidence sufficient to rebut that showing." Id. It stated that not every alien must be released after six (6) months; but, rather, an alien may still be detained beyond six (6) months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. The

4

Zadvydas holding was limited to removable aliens. In Clark v. Martinez, __ U.S. __, 125 S.Ct. 716, 727 (2005), the Supreme Court extended Zadvydas to two Mariel Cubans who had been deemed inadmissible to the United States. Thus, Hsu is entitled to protection under Zadvydas regardless of whether he is a removable or an inadmissible alien.

In response to Zadvydas, the ICE adopted 8 C.F.R. §241.13. The regulation "establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at §241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed, or to a third country, in the reasonably foreseeable future." 8 C.F.R. §241.13(a). Specifically, an eligible alien may make a written request for release to the HQPDU, "asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country willing to accept the alien." 8 C.F.R. § 241.13(d)(1).

Within ten (10) business days of receipt of the request, the HQPDU must provide the alien a written response acknowledging receipt of his request and explaining the procedures that will be used to evaluate the request. 8 C.F.R. § 241.13(e)(1). The HQPDU may grant an interview to the alien if such an interview

5

would "provide assistance in rendering a decision." 8 C.F.R. § 241.13 (e)(5). The factors that the HQPDU must consider include:

> the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question, and the receiving country's willingness to accept the alien into its territory.

8 C.F.R. § 241.13(f). The regulation further provides that the "HQPDU shall issue a written decision based on the administrative record, including any documentation provided by the alien, regarding the likelihood of removal and whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future under the circumstances. The HQPDU shall provide the decision to the alien, with a copy to counsel of record, by regular mail." 8 C.F.R. § 241.13(g).

Hsu alleges that he challenged his continued detention by filing a <u>Zadvydas</u>-type request for release with the HQPDU on August 18, 2005. A copy of that filing has been submitted for consideration by the Court. <u>See</u> Record document no. 7, Exhibit 3, p. 3.

The response contains no mention of Hsu's August 18, 2005 submission and generally indicates that Petitioner "has failed to file a request for release with ICE." Record document no. 5, p. 5. Respondent acknowledges that on September 8, 2005, the HQPDU issued a written decision continuing Petitioner's detention. <u>See id</u>. at

6

Exhibit 5.  However, the response appears to be asserting that the HQPDU's September 8, 2005 decision wasn't conducted pursuant to 8 C. F.R. § 241.13, i.e., not generated by Hsu's August 18, 2005 request.  Rather, the Respondent is presumably stating that the HQPDU's September 8, 2005 ruling was simply the final administrative determination regarding detention as referenced in the May 9, 2005 decision by Field Office Director Decker.

Based on this Court's review of the response, it appears that the HQPDU has not considered the merits of Petitioner's present arguments and supporting documents. Consequently, this Court hereby directs the Respondent, in accordance with the directive of the Attorney General, to treat, as of this date, Hsu's present petition for a writ of habeas corpus under §2241, reply and accompanying supporting documents as a request for release under 8 C.F.R. §241.1.  See  Zhang v. United Sates Attorney General, Civil No. 3:CV-02-336 slip op.  (M.D. Pa.  March 11, 2002) (Conaboy, J.); Singh v. INS, Civil No. 1:CV-01-1820, slip op. (M.D. Pa. Oct. 2, 2001)(Rambo, J.). The ICE shall respond to the request within thirty (30) days as mandated.  Having referred the matter to the ICE for disposition under existing review procedures, the petition will be dismissed without prejudice.  Hsu may reassert his present claims in a new § 2241 action, if the HQPDU fails to act on his request in a timely and complete manner. Consequently,

**IT IS HEREBY ORDERED**:

7

1. The petition for writ of habeas corpus, reply, and accompanying supporting documents (Record document nos. 1,6 & 7) which challenge Hsu's ongoing detention are construed as a request for release under 8 C.F.R. § 241.13.  The ICE shall respond to the request as mandated under said regulations.

2. Petitioner's challenge to his ongoing detention, having been referred to the ICE for disposition under its existing review procedures, is hereby dismissed without prejudice.

3. If the HQPDU fails to respond in a timely and complete manner, Petitioner may reassert his present claims in a new § 2241 petition.

4. The Clerk of Court is directed to close the case.


   s/ James F. McClure, Jr.  
JAMES F. McCLURE, JR.  
United States District Judge